1 | **LEWIS BRISBOIS BISGAARD & SMITH** LLP
REBECCA R. WEINREICH, SB# 155684
2 |  E-Mail: Rebecca.Weinreich@lewisbrisbois.com
221 North Figueroa Street, Suite 1200
3 | Los Angeles, California 90012
Telephone: 213.250.1800
4 | Facsimile: 213.250.7900

5 | Attorneys for Defendant Sentinel
Insurance Company, Ltd., erroneously
6 | sued and served as The Hartford dba The
Hartford Insurance Company, Parent
7 | Company The Hartford Financial Services
Group

8

9

10

11

12

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14 | FARIVAR GOUHARI, an individual, | CASE NO.
and DOES 1-100 inclusive,
15 |             Plaintiff, | **NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTION 1441(b) (DIVERSITY)**
16 |         vs.
17 | THE HARTFORD (dba THE HARTFORD INSURANCE | Trial Date:    None Set
18 | COMPANY, Parent Company THE HARTFORD FINANCIAL SERVICES
19 | GROUP), and DOES 1-100 inclusive,
20 |        Defendants.

21

22

23 |       PLEASE TAKE NOTICE that defendant Sentinel Insurance Company, Ltd.

24 | erroneously sued and served as The Hartford dba The Hartford Insurance Company,

25 | Parent Company The Hartford Financial Services Group Insurance Company

26 | ("Sentinel"), hereby removes to this Court the State Court action described below,

27 | pursuant to the provisions of 28 U.S.C. § 1446, on the basis of diversity of

28 | 4838-6516-0736.1



1   citizenship pursuant to 28 U.S.C. § 1441(b) as follows.

2   **A.    The Removal Notice Is Timely**

3   1.    On October 29, 2014, an action was commenced in the Superior Court

4   of the State of California in and for the County of Los Angeles, entitled Farivar

5   Gouhari, an individual, and Does 1-100 inclusive v. the Hartford (dba The Hartford

6   Insurance Company, Parent Company The Hartford Financial Services Group), and

7   Does 1-100 inclusive, Case No. BC562192 (hereinafter referred to as "the Gouhari

8   action"). A copy of the Complaint in the Gouhari action is attached hereto as

9   Exhibit "1."

10   2.    The first date on which defendant Sentinel received notice of and a

11   copy of the Complaint in the Gouhari action was October 29, 2014, when plaintiff

12   Farivar Gouhari ("plaintiff" or "Gouhari") sent to CT Corporation System, the agent

13   for service of process for Sentinel, the summons and Complaint in the Gouhari

14   action. This Notice of Removal is filed within thirty (30) days thereafter and is

15   timely filed pursuant to 28 U.S.C. § 1446(b). A copy of the summons together with

16   a copy of the notice from CT Corporation System, are collectively attached hereto as

17   Exhibit "2."

18   **B.    Diversity Jurisdiction Lies Over This Action**

19   3.    This suit is a civil action of which this Court has original jurisdiction

20   under 28 U.S.C. Section 1332, and is one which may be removed to this Court by

21   defendant Sentinel pursuant to the provisions of 28 U.S.C. Section 1441(b), in that it

22   is a civil action between citizens of different states and the matter in controversy

23   exceeds the sum of $75,000.00, exclusive of interest and costs.

24   4.    In this lawsuit, Plaintiff alleges that it is the insured under an insurance

25   policy issued by Sentinel, and that it has been damaged by Sentinel's denial of

26   coverage for an underlying claim. Plaintiff alleges that it has been damaged in the

27   amount of not less than $90,000.00. (See Paragraph Nos. 3, 12, 23, 25, 31, 41 of

28   

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4838-6516-0736.1

2

1   plaintiff's Complaint.)

2       5.      Complete diversity of citizenship exists in the Gouhari action.  At
3   paragraph 7 of the Complaint, Gouhari's alleges the insured property is at "12631
4   Collins" (Complaint at ¶ 7).  The exhibits to the Complaint (which are collectively
5   marked as Exhibit "A") amplify that allegation, confirming that Gouhari's residence
6   is at the insured property, 12631 Collins St., Valley Village, CA 91607.   Complaint
7   at Exhibits A pp. 4, 7, 14, 18, 22, 32; and B at pp. 2-3.  A July 2, 2014 letter from
8   Gouhari's counsel to Sentinel (Complaint, Exhibit "A", p. 4) confirms Gouhari
9   resides at the insured property.

10      6.      Sentinel was at the time of the filing of this action and still is a
11  corporation incorporated under the laws of the State of Connecticut.  Its main
12  administrative office and principal place of business is One Hartford Plaza,
13  Hartford, Connecticut.

14      7.      Defendant Sentinel Insurance Company, Ltd. erroneously sued and
15  served as The Hartford dba The Hartford Insurance Company Parent Company The
16  Hartford Financial Services Group is the only named defendant in the Gouhari
17  action.

18      8.      The Complaint also names "Does 1 through 100, inclusive," as
19  Defendants in this lawsuit.  Under U.S.C. § 1441(b)(1), "for purposes of removal
20  under this chapter, the citizenship of defendants sued under fictitious names shall be
21  disregarded."

22      11.     Therefore, complete diversity exists and removal is appropriate.

23  **C.   All Other Requirements for Removal Have Been Met**

24      12.     This removal notice is filed in the United States District Court for the
25  Central District of California, because the Gouhari action is pending in the County
26  of Los Angeles

27      13.     Written notice of the filing of this Notice has been given to all adverse

28  

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTION 1441(b)
(DIVERSITY)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    parties as required by law, including 28 U.S.C. § 1446(d).

2         14.    A true and correct copy of this Notice will be filed with the Los

3    Angeles County Superior Court as required by law.

4         15.    On November 19, Sentinel filed and served its answer to Gouhari's

5    Complaint.  A true and correct copy of Sentinel's answer is attached to this notice as

6    Exhibit "3".

7         16.    Pursuant to 28 U.S.C. § 1446(a), Exhibits 1, 2 and 3 comprise all

8    process, pleadings, and orders served upon or by Sentinel in the <u>Gouhari</u> action.

9

10        WHEREFORE, Sentinel files this Notice of Removal of this action from

11   aforesaid Superior Court, in which it is now pending, to the Southern District Court

12   of California.

13   DATED: November 21, 2014          LEWIS BRISBOIS BISGAARD & SMITH LLP

14

15

16                                     By:    /s/ Rebecca R. Weinreich
                                              Rebecca R. Weinreich
17                                            Attorneys for Defendant Sentinel Insurance
                                              Company, Ltd., erroneously sued and
18                                            served as The Hartford dba The Hartford
                                              Insurance Company, Parent Company The
19                                            Hartford Financial Services Group
20

21

22

23

24

25

26

27

28



1    **FEDERAL COURT PROOF OF SERVICE**

2    *Gouhari v. The Hartford, et al.* - File No. 33196.15

3    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4          At the time of service, I was over 18 years of age and not a party to the action.
     My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, CA
5    90012. I am employed in the office of a member of the bar of this Court at whose
     direction the service was made.

6
           On **November 21, 2014**, I served the following document(s): **NOTICE OF**
7    **REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C.**
     **SECTION 1441(B) (DIVERSITY)**

8
           I served the documents on the following persons at the following addresses
9    (including fax numbers and e-mail addresses, if applicable):

10   Natan Davoodi, Esq.
     The Law Offices of Natan Davoodi, Esq.
11   3580 Wilshire Boulevard
     Suite 1260
12   Los Angeles, CA 90010
     Tele: (213) 889.4554
13   Fax: (213) 382.4083
     *Attorneys for Plaintiff*

14

15         The documents were served by the following means:

16   ☒   (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically
         filed the documents with the Clerk of the Court using the CM/ECF system,
17       which sent notification of that filing to the persons listed above.

18         I declare under penalty of perjury under the laws of the United States of
     America and the State of California that the foregoing is true and correct.

19
           Executed on **November 21, 2014**, at Los Angeles, California.

20

21                                        _Jeanne Ideno_

22                                        Jeanne Ideno

23

24

25

26

27

28   4838-6516-0736.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# EXHIBIT "1"

בס"ד

Natan Davoodi, Esq. (SBN 282806)
**The Law Offices of Natan Davoodi, Esq.**
3580 Wilshire Blvd., Suite 1260
Los Angeles, CA 90010
Phone: 310-889-4554
Fax: 213-382-4083
Attorney for Plaintiffs

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**OCT 2 9 2014**

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

THE LAW OFFICES OF NATAN DAVOODI
3580 WILSHIRE BLVD., SUITE 1260
LOS ANGELES, CA 90010
(310) 889-4554 (P) - (213) 382-4083 (F)

## SUPERIOR COURT OF THE STATE OF CALIFORNIA,
### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| FARIVAR GOUHARI, an individual, and DOES 1-100 inclusive, <br><br> Plaintiff, <br><br> v. <br><br> THE HARTFORD (dba THE HARTFORD INSURANCE COMPANY, Parent Company THE HARTFORD FINANCIAL SERVICES GROUP), and DOES 1-100 inclusive <br><br> Defendants | CASE NO. **BC 5 6 2 1 9 2** <br><br> **UNLIMITED JURISDICTION** <br><br> **Jury Trial Demanded** <br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACTUAL DUTY TO PAY A COVERED CLAIM** <br> 2. **BREACH OF THE IMPLIED COVENANT; OF GOOD FAITH AND FAIR DEALING;** |

Plaintiff FARIVAR GOUHARI ("Plaintiff"), Individually by his attorneys, The Law Offices of Natan Davoodi, respectfully alleges, upon information and belief:

1.  Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, Defendant THE HARTFORD FINANCIALS SERVICES GROUP, Parent Company of THE HARTFORD dba THE HARTFORD INSURANCE COMPANY, and DOES 1-100 were and are insurance companies authorized to do and doing business as liability insurers in the State of California, including the County of Los Angeles.

COMPLAINT FOR DAMAGES 　　　　　　1

בס"ד

2. Plaintiff is ignorant of the true names and capacities, whether individual, associate, partnership, corporate or otherwise, of Defendants fictitiously designated herein as Does 1-100, inclusive, and therefore sues those Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint when the true names and capacities of such designated Defendants have been ascertained. Plaintiff is informed and believes and based thereon alleges that each fictitiously designated Defendant in some way as yet unknown to Plaintiff is and was in some manner responsible for, or a party to, the disputes and other acts alleged herein.

3. Plaintiff has in full force and effect one or more written insurance policies with Defendant insuring Plaintiff as a named insured against liability for property damage during part or all of the period in which property damage occurred. Defendant's policies include, but are not limited to, the following insurance policies:

| **Defendant** | **Policy Number** |
|---|---|
| The Hartford | PP0011784393 (hereafter "The Policy" or "The Contract") |

4. Plaintiff is informed and believes and thereupon alleges that Defendant THE HARTFORD is a name variation and also known as the following:

    1. EARTFORD INSURANCE GROUP
    2. F HARTFORD LIFE INSURANCE CO
    3. HAFTFORD LIFE AND ANNUITY INSURANCE COMPANY C/O HARTFORD INV
    4. HARFORD FUND, INCORPORATED
    5. HARFORD LIFE AND ANNUITY INSURANCE COMPANY C/O HARTFORD INVE
    6. HART LIFE INSURANCE COMPANY
    7. HARTFORD BOND HLS FUND, INC.
    8. HARTFORD CAS INS CO
    9. HARTFORD CASUALITY INS CO
    10. HARTFORD CASUALTY INC SO
    11. HARTFORD CASUALTY INS CO
    12. HARTFORD CASUALTY INSURANCE COMPANY OF INDIANA
    13. HARTFORD CORE FUND ID, LIMITED PARTNERSHIP
    14. HARTFORD CORE FUND, LIMITED PARTNERSHIP
    15. HARTFORD EQUITY PARTNERSHIP VALUE FUND, LLC
    16. HARTFORD EQUITY SALES COMPANY, INC.
    17. HARTFORD FINANCIAL GROUP INC
    18. HARTFORD FINANCIAL SERV GROUP
    19. HARTFORD FINCL SVCS GROUP INC
    20. HARTFORD FINL SVCS GROUP INC
    21. HARTFORD FIRE INS CO
    22. HARTFORD FIRE INSUANCE CO
    23. HARTFORD FIRE INSURANCE COMPANY, (THE)
    24. HARTFORD FIRE INSURANCE COMPANY, AS AGENT
    25. HARTFORD FIRE INTERNATIONAL, LTD.

COMPLAINT FOR DAMAGES                    2

26. HARTFORD GNMA/MORTGAGE SECURITIES FUND, INC
27. HARTFORD GROUP, INC
28. HARTFORD HOLDINGS INC
29. HARTFORD INDEX FUND, INC.
30. HARTFORD INS CO OF THE SOUTHEAST
31. HARTFORD INS COMPANY OF THE MIDWEST
32. HARTFORD INS OF THE SOUTHWEST
33. HARTFORD INSCOOF THE MIDWEST
34. HARTFORD INSURANCE CO OF ILL
35. HARTFORD INSURANCE COMPANY OF TH
36. HARTFORD INSURANCE COMPANY OF THE SOUTHEAST
37. HARTFORD INSURANCE GROUP , THE
38. HARTFORD INTERNATIONAL INSURANCE COMPANY
39. HARTFORD INVESTMENT FINANCIAL SERVICES COMPANY
40. HARTFORD INVESTMENT MANAGEMENT COMPANY
41. HARTFORD INVESTMENT SERVICES, INC.
42. HARTFORD INVESTORS CORPORATION
43. HARTFORD LIE INSURANCE COMPANY
44. HARTFORD LIFE & ACCI
45. HARTFORD LIFE & ACCIDENT
46. HARTFORD LIFE & ACCIDENT INS CO , A CORPORATION
47. HARTFORD LIFE & ANNUITY INC CO
48. HARTFORD LIFE & ANNUITY INS CO
49. HARTFORD LIFE & ANNUNITY INS
50. HARTFORD LIFE , INC.
51. HARTFORD LIFE AND ACCDENT INSURANCE COMPANY
52. HARTFORD LIFE AND ACCIDENT INS
53. HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY C/O HARTFORD
INVESTMENT MANAGEMENT
COMPANY
54. HARTFORD LIFE AND ACCIDENTAL INSURANCE COMPANY C/O HARTFORD
55. HARTFORD LIFE AND ACCIENT INSUR CO
56. HARTFORD LIFE AND ANNUITY INSURANCE COMPANY
57. HARTFORD LIFE AND ANNUITY INSURANCE COMPANY C/O HARTFORD
INVESTMENT MANAGEMENT
COMPANY
58. HARTFORD LIFE AND ANNUITY INSURANCE COMPANY C/O HARTFORD MAN
59. HARTFORD LIFE AND ANUUITY INSURANCE COMPANY C/O HARTFORD
INVESTMENT MANAGEMENT
COMPANY
60. HARTFORD LIFE GROUP INSURANCE COMPANY
61. HARTFORD LIFE INS COMPANY
62. HARTFORD LIFE INSURANCE AND ANNUITY COMPAY, A CONNECTICUT STOCK LIFE
INSURANCE
COMPANY
63. HARTFORD LIFE INSURANCE COMPANIES
64. HARTFORD LIFE INSURANCE COMPANY (A STOCK INSURANCE COMPANY)
65. HARTFORD LIFE INSURANCE COMPANY OF CONNECTICUT, THE
66. HARTFORD LIFE INSURANCE COMPANY, A CONNECTICUT STOCK LIFE INSURANCE
COMPANY
67. HARTFORD LIFE INTERNATIONAL, LTD.
68. HARTFORD MANAGEMENT COMPANY
69. HARTFORD MANAGEMENT SERVICES COMPANY 9/28/81
70. HARTFORD RE COMPANY
71. HARTFORD RE MANAGEMENT COMPANY
72. HARTFORD SPECIALTY COMPANY, INC.
73. HARTFORD UNDERWRITERS INS CO
74. HARTFORD UNDERWRITERS INSURANCE COMPANY
75. HARTFORD VARIABLE ANNUITY LIFE INSURANCE CO
76. HARTFORF LIFE INSURANCE COMPANY
77. HARTRE COMPANY, L.L.C.
78. HTFD FIRE INSURANCE CO

COMPLAINT FOR DAMAGES                    3

בכ"ד

79. HVA AGGRESSIVE GROWTH FUND, INC.
80. HVA BOND FUND, INC.
81. I T T HARTFORD INS GROUP
82. I T T HARTFORD INSURNACE
83. ITT HARTFORD GROUP, INC.
84. ITT HARTFORD INSURANCE CENTER, INC.,
85. ITT HARTFORD INSURANCE CORPORATION
86. ITT HARTFORD INSURANCE GROUP FOUNDATION, INCORPORATED
87. ITT HARTFORD LIFE & ANNUTY
88. ITT HARTFORD LIFE AND ANNUITY INSURANCE COMPANY
89. ITT HARTFORD LIFE INSURANCE CO
90. ITT LIFE INSURANCE CORPORATION
91. NATIONAL PREMIUM AUDIT SERVICES
92. NEW YORK UNDERWRITERS INSURANCE COMPANY
93. NUTMEG INSURANCE AGENCY, INC.
94. NUTMEG INSURANCE COMPANY
95. OMNI GENERAL AGENCY, INC.
96. OMNI MANAGING GENERAL AGENCY, INC.
97. PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD
98. THE HARFORD FINANCIAL SERVICES GROUP, INC.
99. THE HARTFORD AUTO INSURANCE
100. THE HARTFORD FINANCIAL SERVICES GROUP , INC.

5. Plaintiff is informed and believes and thereupon alleges that Defendant THE

HARTFORD is named variant of THE HARTFORD INSURANCE COMPANY and that

THE HARTFORD FINANCIAL SERVICES GROUP is the parent company of THE

HARTFORD. Plaintiff is informed and believes and thereupon alleges that each named

variation of Defendant is the same entity and/or a successor in interest, agent, employee,

partner, joint venture, parent, subsidiary and/or affiliate of each other and, in doing the things

alleged herein, were acting within the coarse and scope of such position with the permission,

knowledge, assistance and consent of each other.

6. All premiums due under Defendants' policies have been fully paid by or on

behalf of Plaintiff and Plaintiff has fully performed, or has been excused from performing, all

terms and conditions required by Defendants' policy(ies).

7. On or about March 01, 2014, Plaintiff opened a claim for property damage to

the insured property located at 12631 Collins ("The Property").

8. On or about March 24, 2014, Defendant inspected The Property.

COMPLAINT FOR DAMAGES                    4

בס"ד

9. On July 2, 2014, Plaintiff *incurred a financial obligation* to pay legal fees and court costs to enforce claims for benefits due under the policy at a rate of $305 an hour and $495 an hour for trial and a month preceding. On or about July 7, 2014, Defendant stated that they did not Deny Plaintiff's claim but that Plaintiff's withdrew their claim.

10. On or about July 10, 2014, Defendants inspected The Property for a second time. At the inspection, Plaintiff and Plaintiff's counsel (Natan Davoodi) were present at the Inspection. At the inspection, Defendant explicitly stated that damage to The Property was not related to a construction defect and stated that the "house is pretty new."

11. On or about July 10, 2014, Plaintiff gave Defendant a ladder to look into the ceiling area to assess what damage he saw. Plaintiff explicitly asked whether there were **any** signs of defective construction. The answer was "NO." Defendant represented that "if there is sagging, it's just the house settling. That's what houses do." Additionally, when Defendant's agent was inspecting the balcony, he explicitly stated on behalf of Defendant that "there's a drain, that's good... there's proper drainage..." Defendant was also explicitly asked whether he thought the tiles were improperly installed and would allow leakage, and Defendant's agent expressly stated, "NO."

12. On July 17, 2014, Defendant, in direct contradiction to their statements denied coverage under The Policy for reasons of faulty workmanship – defective construction. Defendant had not sent a copy of Defendant's Inspection Report.

13. On or about July 24, 2014, Plaintiff contacted Defendant and asked how their Denial of Coverage was substantiated as it directly contradicted what was represented to Plaintiff during the actual inspection. Plaintiff also asked how Defendant could maintain their position, when no Inspection Report was produced to support their findings. Linda Goodman,

COMPLAINT FOR DAMAGES                5

1 Defendant's Senior Claim Representative, then represented that Plaintiff was required to

2 allow Defendant to perform a **third inspection.**

3  14. On or about July 31, 2014, Plaintiff contacted Defendant and stated that before

4 moving on to a **third** inspection, Plaintiff would like to have the Inspection Report from the

5

6 **second inspection** that took place on July 10, 2014.

7  15. On August 2, 2014, Defendant sent a document which they claimed was a

8 report from the **Second** Inspection that took place on July 10, 2014. The Inspection Report

9 was undated and unsigned and did not represent how many pages the complete inspection

10 reported contained, and who had prepared the inspection. Additionally, the report referenced

11

12 photographs which were not contained in the report.

13  16. On August 8, 2014, Plaintiff asked that Defendant specify:

14    a. **How many pages the complete Inspection Report Contained**
      b. **How many photographs were taken during the inspection**
15    c. **The date the report was prepared**
      d. **Whose opinion the report represented**
16    e. **Who prepared the Inspection Report**

17

18  17. On August 14, 2014, Defendant's Linda Goodman sent an email response

19 dated "August 8, 2014" with 21 photos attached.

20  18. On August 21, 2014, Plaintiff contacted Defendant and stated that of the 21

21 photos sent, not a single photo was present showing the beam that was allegedly installed

22 improperly. Additionally, Defendants never responded to Plaintiff's other questions of how

23

24 many pages the Inspection Report Contained, how many photographs were taken during the

25 inspection, whose opinion the report represented and who had prepared the inspection report.

26  19. On August 25, 2014, Plaintiff contacted Robert Rupp, Executive Vice

27 President and Chief Risk Officer of The Hartford. Plaintiff informed and Robert Rupp had

28

COMPLAINT FOR DAMAGES        6

1  knowledge of The Hartford's deliberate contradictions and fabricated reports to deny

2  coverage under The Policy. (Attached hereto as Exhibit A is a true and correct copy of the

3  correspondence sent and received by Robbert Rupp, and made part hereof).

4  20.   After having received Plaintiff's correspondence dated August 25, 2014,

5

6  Defendant again stated that they denied coverage and withheld due policy payments.

7  21.   Despite having performed two separate inspections, Defendants denied

8  coverage, demanded a third investigation and claimed that Defendants "have not been given

9  the opportunity to complete a full investigation of this loss."

**FIRST CAUSE OF ACTION**
**(Breach of Contractual Duty to Pay a Covered Claim**
**Against All Defendants)**

22.   Plaintiff realleges and incorporates herein by reference each of the allegations

of Paragraphs 1 through 21 above, inclusive.

23.   Plaintiff and Defendant entered into a Contract for insurance coverage through

Policy Number 61RBB638723. On or about June 15, 2014, Policy Number 61RBB638723

was renewed and had the same terms and policies as appeared on March 1, 2014, and had a

Policy Term effective from June 25, 2014 through June 15, 2015. (Attached hereto as Exhibit

B, is a true and correct copy of the Insurance Policy, and made part hereof).

24.   Having paid all premiums due, Plaintiff did all, or substantially all, or the

significant things that the contract required him to do.

///
///
///
///

COMPLAINT FOR DAMAGES          7

בס"ד

1   ///

2       25.     On July 17, 2014, Defendant stated that Plaintiff's claim Number

3   PP0011784393 was denied pursuant SECTION I – EXCLUSIONS of The Policy, which

4   states:

5
6       B. We do not insure for loss to property described in Coverages A and B caused by any
           of the following. However, any ensuing loss to property described in Coverages A
7          and B not precluded by any other provision in this policy is covered.
          3. Faulty, inadequate or defective:
8              a. Planning, zoning, development, surveying, siting;
               b. Design, specifications, workmanship, repair, construction, renovation,
9                 remodeling, grading, compaction;
               c. Materials used in repair, construction, renovation or remodeling; or
10             d. Maintenance;
                  of part or all of any property whether on or off the "residence premises".
11
12      26.     Defendant had represented to Plaintiff on July 10, 2014 that there was no

13  faulty, inadequate or defective construction in any way.

14      27.     COVERAGES 0 SECTION I of the Policy states that Defendant will cover the

15
16  costs of a loss associated with The Property and its:

17      A. DWELLING
        B. OTHER STRUCTURES
18      C. PERSONAL PROPERTY
19      D. LOSS OF USE

20  (See Exhibit B)

21      28.     By reason thereof, under the terms of The Policy, Plaintiff became entitled to

22  receive from Defendants, and Defendant became obligated to pay to Plaintiff all costs

23  associated with the repair of damages.
24
25      29.     All conditions required by The Policy (the Contract) for Defendant's

26  performance had occurred.

27

28

COMPLAINT FOR DAMAGES                    8

30. On or about July 2, 2014 through August 25, 2014, Plaintiff requested that Defendant perform its obligations under The Policy contract.

31. On or about July 17, 2014, defendant breached The Policy contract by not making full payments to cover the full costs of repairs.

32. Defendants did not perform their owed duties under The Policy because they did not cover all the costs required to repair The Property.

33. Defendant failed to do something that The Policy (The Contract) required it to do.

34. Defendant's nonperformance was intentional.

35. Having failed to make full payments to cover the full costs of repairs as required by The Policy, The Contract was not substantially Performed by Defendant.

36. Defendants' non-payment of the full cost of repairs substantially affected the usefulness of consideration for which Plaintiff bargained.

37. Defendants have not sent a check or any other form of payment to cover the costs of repairs.

38. Plaintiff has not received a check or any other form of payment to cover the costs of repairs.

39. Plaintiff suffered a loss, all or part of which was covered under Policy Number 61RBB638723 with Defendant.

40. Defendant was notified of the loss as required by The Policy.

41. As a result of defendant's breach of The Contract, Plaintiff has sustained damages in a sum over $90,000.

42. Defendant failed to pay the covered loss in a sum over $90,000.00.

COMPLAINT FOR DAMAGES 9

בס"ד

43.    In committing the acts described in Paragraphs 1-36 of this complaint, Defendants acted in conscious disregard of the rights of plaintiff and was guilty of malice *and* oppression in that Defendants explicitly fabricated their July 10, 2014 Inspection Report to contradict their actual findings to avoid liability, intentionally failed to disclose the actual number photographs of the Inspection Report, intentionally failed to date the Inspection Report to avoid liability, intentionally failed to disclose all required information to avoid liability, and intentionally demanded a third inspection (despite not having completed a second inspection) in order to avoid liability and have therefore, knowingly, intentionally, maliciously and oppressively withheld due policy payments from Plaintiff. The conduct of Defendants warrants an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar wrongful conduct.

### SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

44.    Plaintiff realleges and incorporates herein by reference each of the allegations of Paragraphs 1 through 43 above, inclusive.

45.    Plaintiff suffered a loss covered under the insurance policy with Defendant.

46.    Defendant was notified of the loss.

47.    In every contract of insurance, including without exception each of the policies issued by Defendants, there is an implied covenant of good faith and fair dealing that the insurer will do nothing to unfairly deprive the insured of the benefits of the contract or to place its own interest before the interests of the insured. Each Defendant, having issued one or more policies to Plaintiff, was at all times material bound to said implied covenant of good faith and fair dealing.

COMPLAINT FOR DAMAGES                    10

בס"ד

48.     In the course of denying coverage and failing and/or refusing to pay on

Plaintiff's behalf for the amount of damages and/or the cost of repairs to The Property, each

insurer breached the implied covenant of good faith and fair dealing by, among other things:

a. Failing to fully and thoroughly investigate Plaintiff's claim for coverage and forcing Plaintiff to perform such investigation at Plaintiff's own expenses;

b. Failing to fully and thoroughly investigate Plaintiff's claim for coverage and forcing Plaintiff to pay for repairs at Plaintiff's own expenses;

c. Delaying resolution of Plaintiff's claim by asserting coverage defenses that were legally and/or factually invalid;

d. Placing unduly restrictive interpretations of its policy terms for the purpose of denying coverage due under The Policy;

e. Refusing to pay for or contribute to costs of repairs on damages and loss sustained to the dwelling, other structures, personal property and loss of use of The Property;

f. Subjecting payment of due policy funds to conditions not included in the policy(ies), including but not limited to conditioning payment upon: (1) Plaintiff to be subjected to an unreasonable and unlimited number of subsequent investigations without having completed prior investigations; (2) Plaintiff's surrendering of rights to coverage under the policy(ies) for all other claims;

g. Forcing Plaintiff to institute litigation to recover amounts due under The Policy;

COMPLAINT FOR DAMAGES                    11

h. Failing to give Plaintiff's interests equal consideration with its own;

i. Failing to modify its coverage position as additional information was provided by Plaintiff.

49. On information and belief, each Defendant engaged in the above course of conduct for the purpose of placing its own interests above those of Plaintiff, its insured, and of withholding from Plaintiff the rights and benefits to which Plaintiff is entitled under the policy(ies).

50. Defendant, unreasonably or without proper cause, failed to pay policy benefits to Plaintiff.

51. As a proximate result of each Defendant's breaches, Plaintiff has been damaged in that it has been forced to conduct the investigation of the claim at its own expense, has not been reimbursed for costs of repairs to The Property, has been forced to sustain over $90,000.00 in damages, and has been forced to directly undertake the cost of ongoing litigation, all without the benefit of the policy(ies) of insurance for which Plaintiff paid valuable premiums. Additionally, Plaintiff has sustained and will continue to sustain attorney's fees and costs in prosecuting this coverage action against each Defendant. Each Defendant has thereby caused Plaintiff to suffer damages in excess of the minimum jurisdictional limits of this Court, subject to proof at trial.

52. Defendant's failure to pay policy benefits was a substantial factor in causing Plaintiff's harm.

53. Each Defendant's conduct as alleged was despicable, oppressive and fraudulent, and was performed with a conscious disregard of Plaintiff's rights, thereby justifying exemplary and punitive damages against each Defendant in an amount sufficient to

COMPLAINT FOR DAMAGES 12

בס"ד

1    punish it for the severity of its conduct, to make an example of it and to deter such conduct in

2    the future.

3

4

5

6    **WHEREFORE,** Plaintiffs pray the Court enter judgment in favor of Plaintiff and against

7    Defendants and as follows :

8        A.  award appropriate monetary damages to Plaintiff in an amount to be proven at trial;
         B.  award a civil penalty of nine times the amount of actual damages;
9        C.  award general damages;
         D.  award special damages;
10       E.  award reasonable and necessary attorneys' fees;
         F.  award damages for emotional distress in an amount three times the amount of general,
11           special and monetary damages;
12       G.  award punitive damages;
         H.  award exemplary damages;
13       I.  require Defendant to pay restitution for its unjust enrichment;
         J.  award prejudgment interest;
14       K.  award costs of suit herein incurred;
         L.  Award such other and further relief as the court may deem proper.
15

16

17                              **JURY TRIAL DEMAND**

18       Plaintiff hereby demands a trial by jury of all issues so triable.

19

20   DATED: September 23, 2014                    THE LAW OFFICES OF NATAN DAVOODI

21

22
                                                 By:
23                                                        Natan Davoodi, Esq.
                                                          Attorney for Plaintiff
24

25

26

27

28

COMPLAINT FOR DAMAGES                        13

# EXHIBIT A

## THE LAW OFFICES OF
## NATAN DAVOODI

3580 Wilshire Blvd.
Suite 1260
Los Angeles, CA 90010
Telephone: 310-889-4554
Facsimile: 213-382-4083
NatanDavoodiLaw.com

**August 25, 2014**

Linda Goodman
Sentinel Insurance Company, LTD
One Hartford Plaza,
Hartford, Connecticut 06155
Phone: (860) 547-6063
Fax:     (866) 809-8054
Email:  Linda.Goodman@TheHartford.com

**Robert Rupp**
Executive Vice President and
Chief Risk Officer, The Hartford
Email:  Robert.Rupp@TheHartford.com

Deborah McCoo
Inside Claim Rep
Phone:    (800) 811-4832 x2309615
Email:  Deborah.McCoo@TheHartford.com

## VIA EMAIL

RE:   **Bad Faith Denial of Due Insurance Payments**
       **Insured:**            **Yocheved A Balakaneh & Farivar Gouhari**
       **Date of Loss:**       **03/01/2014**
       **Policy Number:**      **61 RBB 638723**
       **Claim Number:**       **PP0011784393**

Robert Rupp,

We hope this letter finds you well. We are writing to you, Robert Rupp, as the Executive Vice President and Chief Risk Officer of the Hartford. As a managing director, agent, and officer, we write to You to inform you of clear inconsistencies that have been made with the handling and investigation processes of Claim Number PP0011784393 that arose on March 1, 2014.

To date, there is clear indicia of oppressive, malicious and fraudulent conduct being perpetuated in the investigative process that have lead to the denial of the aforementioned claim of your insured, our Clients – Yocheved A Balakaneh and Farivar Gouhari.

As one example, during an inspection that was performed on or about July 10, 2014, we were explicitly told by your agent that there was no faulty construction found, nor any defective installation of the balcony that could lead to the damages claimed. However, The Hartford denied coverage to the same claim as a result of "defective construction," mainly that a beam was improperly installed and that there was defective installation of tiling – both statements which directly contradicted The Hartford's previous representations. Most recently, we have received a correspondence from The Hartford, further continuing the string of misrepresentations, for example, stating that we were shown photographs of the inspection – which was never the case.

We bring these facts to your attention to notify you of our concerns and the clear indicia of bad-faith that have ensued. We have enclosed/attached a copy of our correspondences, to allow place you on notice of our concerns. We again hope to resolve this matter as quickly and as efficiently as possible in light of the clear presence of bad-faith tactics and clear indicia of malicious and oppressive conduct to withhold due insurance payments to your insured, our Clients.

To date, our client (your insured) has incurred **$4,528.39** in attorney's fees to recover policy benefits. (See *Brandt v. Sup.Ct. (Standard Ins. Co.)* (1985) 37 C3d 813, 817, 210 CR 211, 213)



Natan Davoodi, Esq

Cc:
   **Linda Goodman**

Enclosed:  Correspondences

- July 2, 2014
- July 2, 2014
- July 7, 2014
- July 13, 2014
- July 17, 2014
- July 24, 2014
- July 31, 2014
- August 2, 2014
- Undated Inspection Report
- August 8, 2014
- August 8, 2014
- August 21, 2014



**THE LAW OFFICES OF
NATAN DAVOODI**

3580 Wilshire Blvd.
Suite 1260
Los Angeles, CA 90010
Telephone: 310-889-4554
Facsimile: 213-382-4083
NatanDavoodiLaw.com

July 2, 2014

Sentinel Insurance Company, LTD
One Hartford Plaza,
Hartford, Connecticut 06155
Phone: (860) 547-6063
Fax:      (866) 809-8054
Email:  Deborah.McCoo@TheHartford.com

Deborah McCoo
Inside Claim Rep
Phone:      (800) 811-4832 x2309615

### LETTER OF REPRESENTATION

RE:      **Bad Faith Denial of Due Insurance Payments**
          Insured:              Yocheved A Balakaneh & Farivar Gouhari
          Date of Loss:        03/01/2014
          Policy Number:     61 RBB 638723
          Claim Number:     PP0011784393

This letter constitutes notice of this firm having been retained by Yocheved Balakaneh & Farivar Gouhari to pursue legal action against you for damages, as a result of Sentinel Insurance Company's false representations, deceptive business practices, fraudulent conduct, and breach of contract.

Please forward all correspondences relating to this matter to our offices. **Do not contact our client**, either directly or indirectly.

Sincerely,

Natan Davoodi, Esq.

# THE LAW OFFICES OF
## NATAN DAVOODI

**3580 Wilshire Blvd.**
**Suite 1260**
**Los Angeles, CA 90010**
**Telephone: 310-889-4554**
**Facsimile: 213-382-4083**
**NatanDavoodiLaw.com**

· **July 2, 2014**

Sentinel Insurance Company, LTD
One Hartford Plaza,
Hartford, Connecticut 06155
Phone: (860) 547-6063
Fax:     (866) 809-8054
Email:  Deborah.McCoo@TheHartford.com

Deborah McCoo
Inside Claim Rep
Phone:      (800) 811-4832 x2309615

## DEMAND LETTER
### PRE-SUIT NOTICE – CAL. CIV. CODE §1782(a)(2)

Pursuant to California Civil Code §1782(a)(2), **Yocheved A Balakaneh & Farivar Gouhari** (hereinafter "our Clients"), and The Law Offices of Natan Davoodi hereby demand that The Hartford and its underwriter Sentinel Insurance Company (collectively referred to as "SIC") and RELATED ENTITIES, SUBSIDIARIES, UNDERWRITERS, PERSONNEL, AND SERVICE AGENTS "correct, repair, replace or otherwise rectify" the prohibited practices which have caused damage to our clients.

Our Clients and SIC entered into an agreement, relating to our **Client's residence located at 12631 Collins Street, Valley Village, CA 91607**, whereby SIC would provide COVERAGES for Dwelling, Other Structures, Personal Property, Loss of Use, Personal Liabilty, and Medical Payments as outlined in the DECLARATIONS of Policy Number 61 RBB638723 ("the Policy") in exchange for our Clients' payment.

Having sustained damage covered by the Policy, our Clients filed Claim Number PP0011784393 and wrongfully denied coverage, citing inapplicable sections of the Policy.

We understand the industry pro-forma exercise of wrongfully force-fitting a claim into an "exclusion" of the Policy to avoid liability. Your letter dated March 21, 2014 merely cuts and pastes portions of the Policy and make a conclusion without any analysis or facts to substantiate your position.

Claim number PP0011784393 is not a loss attributed to wear and tear, marring, deterioration, settling, shrinking, bulging or expansion, or earth movements. Likewise the loss is not attributed to any of the Perils you reference.

### Demand

In their dealings with SIC and its agents and personnel, our Clients contracted with SIC for goods and services. Accordingly, in this transaction, SIC's services constitute "service" under Cal. Civ. Code §1761(a), our Client is clearly a "consumer" as such term is defined in Cal. Civ. Code §1761(d), and the purchase of SIC's services was a "transaction" as defined in Cal Civ. Code §1761(e).

Our client asserts that SIC committed a number of false, misleading or deceptive acts and practices prohibited by Cal. Civ. Code §§1750 and 17500, Business and Professions Code §17200, and the California Legal Remedies Act, including but not limited to, the following:

(1) Representing that goods or services have characteristics, uses, or benefits which they do not have;
(2) Representing that goods or services are of a particular standard, quality, or grade, if they are of another;
(3) Advertising goods or services with intent not to sell them as advertised;

Page 1



(4) Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(5) Failing to disclose information concerning goods or services which was known at the time of the transaction thereby intending to induce our client into entering into the referenced agreement, knowing that he would not have entered into such agreement had such information been disclosed;

Additionally, SIC is intentionally and wrongfully withholding due policy benefits from our Client.

The foregoing violations were committed knowingly and intentionally, and our Clients relied on your representations, acts, and omissions to their damage and detriment.

In addition to constituting numerous violations of the California Consumer Protection – Unfair Deceptive Trade Practices Act, the above-described acts and omissions made by you constituted, among other things:

(a) Fraud;
(b) Intentional Misrepresentation;
(c) Misrepresentation;
(d) Negligence;
(e) Negligent misrepresentation;

(f) Breach of contract;
(g) Bad Faith
(h) Breach of express warranty;
(i) Breach of implied warranty;
(j) Breach of duty of good faith and fair dealing
    Unjust Enrichment

As a direct result of your wrongful acts and omissions, our Clients have been compelled to retain the services of this firm to seek redress for the damages they have suffered. As of the date of this writing, our client has incurred fees for the legal services and related costs incurred in this matter, which will continue to accumulate.

Therefore, the total damages thus far suffered by our clients as a direct consequence of your fraudulent acts is ████████, comprised as following:

Damages Covered by the Policy
Violations of B&P Section 17200 and C.C. Section 17500
Attorney's Fees
*(Potential Punitive Damages Pursuant to Civil Code §3294*



TBD)

Demand is hereby made upon **THE HARTFORD, SENTINEL INSURANCE COMPANY** and its **SUBSIDIARIES** , jointly and severally, to immediately pay the total amount of damages sustained, ████████ to our Clients through this office immediately.

This letter constitutes notice that unless we receive a certified check, cashier's check, or money order for such full amount, ████████ on or before July 07, 2014, this firm has been instructed to take whatever steps are necessary to protect our client's interests.

In such event, our client has authorized and instructed us to file and pursue a lawsuit against SIC, and related entities, agents, and subsidiaries to collect all damages caused by the above-described wrongful representations, acts, and omissions.

In connection with such litigation, we have been directed to pursue all proper legal remedies and to seek all available relief including, but not limited to, direct and consequential damages, penalties as provided by the California Consumer Protection – Unfair and Deceptive Trade Practices Act, attorney fees, *Brandt* Fees, interest, court costs, and such additional punitive damages as may be legally appropriate.

Pursuant to California Civil Code, please be advised that if this claim has not been resolved within the statutory time period from the date you receive this notice, the petition in the above-referenced lawsuit

Page 2

against you will be amended to request additional relief under the provisions of California's Civil Code, including treble damages as authorized therein.

Please pay this claim now to avoid litigation and further expense. Your received immediate written response to this serious matter will be appreciated by the close of business July 7, 2014.

Very truly yours,

Natan Davoodi, Esq.

Page 3



**THE HARTFORD**

July 07, 2014

Natan Davoodi
3580 Wilshire Blvd. Ste 1260
Los Angeles, CA 90010

Re:  Date of Loss:      03/01/2014
     Claim Number:      PP0011784393
     Insured:           Yocheved A Balakaneh & Farivar Gouhari
     Policy Number:     61 RBB 638723

Dear Mr. Davoodi:

My name is Linda Goodman  and I will be handling the recently reported claim for our insured's Yocheved
Balakaneh and Farivar Gouhari.  Please keep this letter for future reference as it includes the claim number, our
office address and telephone number. Should you need to reach me, my office hours are between 7:30 am to 4
pm. I acknowledge your representation of the insureds. Please note, we did not deny the loss for our insureds,
they withdrew the claim. If they would like to pursue the claim, we will send out a field adjuster, investigate the
cause of loss, determine coverage and issue payment on any covered damages.

Please note that the purpose of this letter is to acknowledge receipt of your claim.  At this time no decision has
been made with regard to whether your policy provides coverage for the claim. We did not investigate the claim
as the insured's did not wish to pursue the claim.

Please forward any estimate you have for repairs to support your demand as well as a W9 with your taxpayer
identification information.

I look forward to working with you and am available to assist you with all questions and concerns you may have related to
the claim.

Sincerely,

Linda Goodman
Sr. Claim Representative
(800) 811-4832 x2307761

Writing  Company Name: Sentinel Insurance Company

Cc:   Yocheved A Balakaneh & Farivar Gouhari
      12631 Collins St.
      Valley Village, CA 91607

Handling ID:CCINSURED
LTR5983311
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax    (866) 809 8054

 

The California Insurance Code requires us to provide you with a copy of Section 790.03 (h) & (i). In addition to Section 790.03 of the Insurance Code, Fair Claims Settlement Practices Regulations govern how insurance claims must be processed in this state. These regulations are available at the Department of Insurance Internet Web site, www.insurance.ca.gov. You may also obtain a copy of this law and these regulations free of charge from this insurer.

### CA Insurance Code Section 790.03

790.03. The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

(7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

(8) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his or her representative, agent, or broker.

(9) Failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made.

(10) Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

(14) Directly advising a claimant not to obtain the services of an attorney.

(15) Misleading a claimant as to the applicable statute of limitations.

(16) Delaying the payment or provision of hospital, medical, or surgical benefits for services provided with respect to acquired immune deficiency syndrome or AIDS-related complex for more than 60 days after the insurer has received a claim for those benefits, where the delay in claim payment is for the purpose of investigating whether the condition preexisted the coverage. However, this 60-day period shall not include any time during which the insurer is awaiting a response for relevant medical information from a health care provider.

(i) Canceling or refusing to renew a policy in violation of Section 676.10.

Please be advised that your policy requires that no legal action may be brought against the writing company identified below unless the policy provisions have been complied with and the action is started within one year after the date of loss.

This insurer reports claim information to one or more claims information databases. The claim information is used to furnish loss history reports to insurers. If you are interested in obtaining a report from a claims information database, you may do so by contacting: LexisNexis Consumer Center, 1200 Bluegrass Lakes Parkway, Alpharetta, GA 30004, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004. If you wish to access the LexisNexis Website, you can use the following address: http://www.consumerdisclosure.com.

Writing Company Name: Sentinel Insurance Company

LTR5983311
«Enter Initials of the Primary Adjuster»

**Writing Company: Sentinel Insurance Company**

Handling ID:
LTR11847428
LG2

HIGC-C00600-PP0011784393-

Page 2 of 2



**THE HARTFORD**

July 13, 2014

Natan Davoodi
3580 Wilshire Blvd Ste 1260
Los Angeles, CA 90010

Re:  Insured:        Yocheved A Balakaneh & Farivar Gouhari
     Date of Loss:   03/01/2014
     Policy Number:  61 RBB 538723
     Claim Number:   PP0011784393
     CCPS Number:    Y23 KDP 05192

Dear Mr. Davoodi:

This letter is acknowledgement of your above referenced claim for damage to the Insured's home; specifically, a crack in the Insured's garage ceiling.

On March 21, 2014 the insured reported a crack in their garage ceiling. Our adjuster inspected on March 24, 2014 and the insured asked us not to move forward with a claim. We sent a withdrawl letter to the insured per their request. We have a concern regarding coverage for the loss as the policy specifically excludes coverage for wear and tear, deterioration, latent defect and faulty workmanship. No investigation was done per the insured's wish to withdraw the claim. Based on your letter, we will proceed with an investigation into the cause of loss and determine if there are any damages covered under the insured's policy.

Please refer to the HO0003 1000 Homeowners 3 Special Form, which provides in part

**SECTION I – PERILS INSURED AGAINST**
**A.  Coverage A – Dwelling And Coverage B – Other Structures**
  1.  We insure against risk of direct physical loss to property described in Coverages A and B.
  2.  We do not insure, however, for loss:
     a.  Excluded under Section I – Exclusions;
     c.  Caused by:
        (6)  Any of the following:
           (a)  Wear and tear, marring, deterioration;
           (b)  Mechanical breakdown, latent defect, inherent vie, or any quality in property that causes it to damage or destroy itself;
           (f)  Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;
        **Exception To c.(6)**
           Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from an accidental discharge or overflow of water or steam from within a
           (II)  Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the

Handling ID:CCINSURED
LTR11436430
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax      (855) 809 8054



system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes accrual damage to a building on the "residence premises". We do not cover loss to the system or appliance from which the water or steam escaped.
For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

## SECTION I - EXCLUSIONS
B.  We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

  3.  Faulty, inadequate or defective:
      a.  Planning, zoning, development, surveying, siting;
      b.  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      c.  Materials used in repair, construction, renovation or remodeling; or
      d.  Maintenance;
      of part or all of any property whether on or off the "residence premises".

It is for this reason that further investigation of this matter is being conducted with a full and complete reservation of rights afforded us under the policy of insurance issued to you by Sentinel Insurance Company. Every effort will be made to protect your interest while we are verifying the coverage for this loss and within the limitation set forth by the conditions of our policy.

Anything done by Sentinel Insurance Company in connection with the above referenced claim, including any investigation into the cause, damages or any other matters related thereto, shall not waive, modify, invalidate or forfeit any of the rights of Sentinel Insurance Company or its agents. Please be assured that we are not rejecting or denying your claim at this time, but we are reviewing the loss for possible coverage under your policy.

Please be advised that although we are conducting our investigation under a Reservation of Rights, you as the owner of the property still have certain duties, which cannot be imparted to Sentinel Insurance Company. We call your attention to CONDITIONS section of your HO0003 1000 policy which states:

B.  Duties After Loss
  In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
  1.  Give prompt notice to us or our agent;
  2.  Notify the police in case of loss by theft;
  3.  Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card; Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;
  4.  Protect the property from further damage. If repairs to the property are required, you must
      a.  Make reasonable and necessary repairs to protect the property; and
      b.  Keep an accurate record of repair expenses;
  5.  Cooperate with us in the investigation of a claim;
  6.  Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

Handling ID:CCINSURED
LTR11436430
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax    (866) 809 8054



**THE HARTFORD**

7. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interests of all "insureds" and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;
   d. Changes in title or occupancy of the property during the term of the policy;
   e. Specifications of damaged buildings and detailed repair estimates;
   f. The inventory of damaged personal property described in 6. above;
   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

Please also be advised under that same Section:

**G. Suit Against Us**
No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

The HW 0103 Endorsement changes the policy. Please refer to the HW 0103 AMENDATORY ENDORSEMENT – SPECIFICALLY EXCEPTED PERILS which provides:

As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

A. **ACTS, ERRORS OR OMISSIONS** by you or others in:
   1. Planning, zoning, developing, surveying, testing or siting property;
   2. Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;
   3. The design, specifications, workmanship, repair, construction, renovation, remolding, grading or compaction of all or any part of the following:
      a. Land or buildings or other structures;
      b. Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or
      c. Other improvements or changes in or additions to land or other property.
   4. The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax      (866) 809 8054



**THE
HARTFORD**

5. The maintenance of any such property or facilities.

This exception A. applies whether or not the property or facilities described above are:

1. Covered under this policy; or
2. On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.

As used in this endorsement:

1. If this policy is written to cover the risk of loss from specifically named cause, "Covered Peril" means any Peril specifically named as covered; or.
2. If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

**B. COLLAPSE, "CRACKING" OR "SHIFTING"** of buildings, other structures or facilities, or their parts, if the collapse, "cracking" or "shifting":

1. Occurs during "earth movement," "volcanic eruption" or "flood" condition or within 72 hours after they cease; and
2. Would not have occurred but for "earth movement," "volcanic eruption" or "flood."

But if loss or damage by a covered Peril ensues at the covered premises, we will pay for that ensuring loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, "cracking" or "shifting" of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more or the following Perils:

1. Earthquake;
2. Flood;
3. Volcanic action;
4. Volcanic eruption; or
5. Sinkhole collapse,.

This exception B. will not reduce that coverage.

As used in this exception B.:

1. "Cracking" means cracking, separating, shrinking, bulging, or expanding;
2. "Shifting" means shifting, rising, settling, sinking, or lateral or other movement;
3. "Earth movement" means any earth movement, including but not limited to "earthquake," landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other "shifting" of earth; all whether or not combined with "flood" or "volcanic eruption." It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;
4. "Earthquake" means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or "shifting" of rock beneath the surface of the ground from natural causes. An "Earthquake" includes all related shocks and after shocks;
5. "Volcanic eruption" means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;
6. "Flood" means:
   a. Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;
   b. Release of water held by a dam, levy or dike or by a water or flood control device;

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4632
Fax      (865) 909 8054



**THE HARTFORD**

   **c.** · Water that backs up from a sewer or drain; or
   **d.** Water under the ground surface pressing on, or flowing, leaking or seeping through:
       **(1)** Foundations, walls, floors or paved surfaces;
       **(2)** Basements, whether paved or not; or ·
       **(3)** Doors, windows or other openings.
   All other provisions of the policy apply.

Again, please be advised that all rights and defenses against coverage granted to this company by your policy are reserved. No estoppel is intended or may be inferred. No term, condition, or exclusion of the policy is waived. If you have any questions or concerns in regards to this loss, please feel free to contact this writer.

Sincerely,

Linda Goodman
Sr. Claim Representative
(800) 811-4832 x2307761

Writing Company Name: Sentinel Insurance Company

Cc:     Youcheved Balakaneh and Farivar Gouhari
        12631 Collins St.
        Valley Village, CA 91607

    **For your protection, California law requires the following to appear on this form:**
**Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty**
        **of a crime and may be subject to fines and confinement in state prison.**

Handling ID:CCINSURED
LTR11436430
LG2

**The Hartford**
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax      (866) 809 8054



**THE HARTFORD**

July 17, 2014

Natan Davoodi
3580 Wilshire Blvd Ste 1260
Los Angeles, CA 90010

Re:  Insured:         Yocheved A Balakaneh & Farivar Gouhari
     Date of Loss:    03/01/2014
     Policy Number:   61 RBB 638723
     Claim Number:    PP0011784393
     CCPS Number:     Y23 KDP 05192

Dear Mr. Davoodi:

We are in receipt of the above referenced claim for water damage. Our insured reported a crack in the ceiling of their garage from an unknown cause. We sent an adjuster to inspect the damage to their home. Our adjuster found no damage on the balcony or roof. He did note a drain on the floor of the balcony. He advised the insured that he believed the covered damages would be below the $5,000.00 deductible. At that time the insured chose to withdraw their claim

On July 3, 2014 we received a letter from you with a demand for payment of ▓▓▓▓▓ without any support for the damages being claimed. We requested a second inspection by a general contractor and roofing expert. They inspected on July 10, 2014. They found what appeared to be small signs of water damage along the garage ceiling. They found that holes had been cut in the drywall ceiling in the garage. They found a beam along the center of the garage ceiling that had been installed upside down allowing the beam to sag under a loaded condition. The improper installation of the beam may be contributing to the cracking/separating of the drywall as well as cracking of the grout on the balcony located directly above. They also found improper installation of tile on the balcony covering the weep screed. This would not allow the balcony to drain properly.

There is coverage for the water damage in the garage. Our adjuster wrote an estimate for drywall, paint, content manipulation, detach and reset the overhead opener and debris removal. The total of his estimate was ▓▓▓▓▓. He previously supplied a copy of the estimate to our insured. There is no coverage for the beam that was installed incorrectly or the repair of the balcony tile that was installed incorrectly. The policy does not cover improper workmanship. No claim payment will be made as the covered damages are under the ▓▓▓▓▓ policy deductible.

**SECTION I – PERILS INSURED AGAINST**

A.  **Coverage A – Dwelling And Coverage B – Other Structures**
    1.  We insure against risk of direct physical loss to property described in Coverages A and B.
    2.  We do not insure, however, for loss:
        a.  Excluded under Section I – Exclusions;
        c.  Caused by:
            (6) Any of the following:
                (a) Wear and tear, marring, deterioration;
                (b) Mechanical breakdown, latent defect, inherent vie, or any quality in property that causes it to damage or destroy itself;
                (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**SECTION I – EXCLUSIONS**

Handling ID:CCINSURED
LTR12621120
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax      (866) 809 8054



**THE HARTFORD**

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.
   **3.** Faulty, inadequate or defective:
      **a.** Planning, zoning, development, surveying, siting;
      **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      **c.** Materials used in repair, construction, renovation or remodeling; or
      **d.** Maintenance;
         of part or all of any property whether on or off the "residence premises".

Please also refer to **SECTION I – CONDITIONS**

**G. Suit Against Us**
   No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

The HW 0103 Endorsement changes the policy. Please refer to the **HW 0103 AMENDATORY ENDORSEMENT – SPECIFICALLY EXCEPTED PERILS** which provides:

As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

**A. ACTS, ERRORS OR OMISSIONS** by you or others in:
   **1.** Planning, zoning, developing, surveying, testing or siting property;
   **2.** Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;
   **3.** The design, specifications, workmanship, repair, construction, renovation, remolding, grading or compaction of all or any part of the following:
      a.  Land or buildings or other structures;
      b.  Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or
      c.  Other improvements or changes in or additions to land or other property.
   **4.** The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or
   **5.** The maintenance of any such property or facilities.
   This exception A. applies whether or not the property or facilities described above are:
   **1.** Covered under this policy; or
   **2.** On or away from the covered premises.
   This exception **A.** does not reduce the insurance for loss or damage caused directly by a Covered Peril.
      As used in this endorsement:
      **1.** If this policy is written to cover the risk of loss from specifically named cause, "Covered Peril" means any Peril specifically named as covered; or

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax    (866) 809 8054



**THE HARTFORD**

2.  If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

**B. COLLAPSE, "CRACKING" OR "SHIFTING"** of buildings, other structures or facilities, or their parts, if the collapse, "cracking" or "shifting":
1.  Occurs during "earth movement," "volcanic eruption" or "flood" condition or within 72 hours after they cease; and
2.  Would not have occurred but for "earth movement," "volcanic eruption" or "flood."

But if loss or damage by a covered Peril ensues at the covered premises, we will pay for that ensuring loss or damage.

This exception **B.** applies whether or not there are other provisions in this policy relating to collapse, "cracking" or "shifting" of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more or the following Perils:
1.  Earthquake;
2.  Flood;
3.  Volcanic action;
4.  Volcanic eruption; or
5.  Sinkhole collapse,

This exception **B.** will not reduce that coverage.

As used in this exception **B.:**
1.  "Cracking" means cracking, separating, shrinking, bulging, or expanding;
2.  "Shifting" means shifting, rising, settling, sinking, or lateral or other movement;
3.  "Earth movement" means any earth movement, including but not limited to "earthquake," landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other "shifting" of earth; all whether or not combined with "flood" or "volcanic eruption." It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;
4.  "Earthquake" means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or "shifting" of rock beneath the surface of the ground from natural causes. An "Earthquake" includes all related shocks and after shocks;
5.  "Volcanic eruption" means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;
6.  "Flood" means:
    a.  Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;
    b.  Release of water held by a dam, levy or dike or by a water or flood control device;
    c.  Water that backs up from a sewer or drain; or
    d.  Water under the ground surface pressing on, or flowing, leaking or seeping through:
        **(1)** Foundations, walls, floors or paved surfaces;
        **(2)** Basements, whether paved or not; or
        **(3)** Doors, windows or other openings.

All other provisions of the policy apply.

As damage caused by improper or faulty workmanship is not covered by the policy, we must respectfully deny any claim for the replacement of the beam or balcony tile or other damage due to faulty workmanship. The covered damages are below the deductible.

Handling ID:CCINSURED
LTR12621120
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax        (866) 809 8054



**THE HARTFORD**

Please be advised that nothing contained within this document or any act of this company or its representatives is to be construed as a waiver of any known or unknown defense we may have under the policy. Nor does this waiver change any provisions or conditions of the policy.

In citing the policy provisions, exclusionary language, and insuring agreement, we, in no way, wish to alter or change the meaning or intent of the policy. Moreover, we do not wish to waive any other policy defenses which may be available to us.

Should you disagree with any facts stated here, or have any additional information you believe needs to be evaluated as part of the claim, please provide that information and we will review accordingly. We reserve the right to examine and cite other policy provisions should new evidence be submitted.

We will, of course, be available to you to discuss the position we have taken. Should you, however, believe your claim has been wrongfully denied or rejected in whole or in part, you may have the matter reviewed by the Consumer Communications Bureau of the California Department of Insurance, 300 South Spring Street, South Tower, Los Angeles, CA 90013 at phone numbers 800-927-Help (4357) or 213-897-8921.

Sincerely,

Linda Goodman
Sr. Claim Representative
(800) 811-4832 x2307761

Writing Company Name: Sentinel Insurance Company

Cc:    Yocheved A Balakaneh & Farivar Gouhari
       12631 Collins St
       Valley Village, CA 91607

Handling ID:CCINSURED
LTR12621120
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax   (866) 809 8054

### THE LAW OFFICES OF
### NATAN DAVOODI

3580 Wilshire Blvd.
Suite 1260
Los Angeles, CA 90010
Telephone: 310-889-4554
Facsimile: 213-382-4083
NatanDavoodiLaw.com

July 24, 2014

Linda Goodman
Sentinel Insurance Company, LTD
One Hartford Plaza,
Hartford, Connecticut 06155
Phone: (860) 547-6063
Fax:   (866) 809-8054 .
Email:  Linda.Goodman@TheHartford.com

Deborah McCoo
Inside Claim Rep
Phone:     (800) 811-4832 x2309615
Email:   Deborah.McCoo@TheHartford.com

RE:   **Bad Faith Denial of Due Insurance Payments**
     **Insured:**       **Yocheved A Balakaneh & Farivar Gouhari**
     **Date of Loss:**    **03/01/2014**
     **Policy Number:**   **61 RBB 638723**
     **Claim Number:**   **PP0011784393**

This letter is in response to your correspondence dated July 17, 2014, wherein you Deny Coverage for
damages covered under the Insurance Policy.

There are several points worth mentioning. Firstly, your inspection intentionally omits damages to the
exterior of the residence (12631 Collins) and only addresses repairs to fixing drywall in the garage.

It is also worth mentioning that the inspection conducted in July 2014, was a secondary inspection after our
offices sent a demand letter on July 2, 2014. The inspection was arranged, seemingly with the intent, to make
a showing that The Hartford is "diligently" investigating the matter.

However, your actions are without merit and being done in bad-faith. The inspection performed in July of
2014 is dated **3/21/2014**. Additionally, having actually attended the inspection of July 2014 in person, the
inspector represented to me that he does not think the damage is related to a construction defect and stated
that the "house is pretty new."

Additionally, we gave the inspector a ladder to look into the ceiling to assess the damage and flat-out asked
him what damage he saw. He took a sample of the drywall and said there seems to be **only** water damage. I
explicitly asked him whether he thought there was construction defect and the agent stated, "No." He stated
that he thinks that "if there is sagging, it's just the house settling. That's what houses do." Additionally, when
your agent was inspecting the balcony, he explicitly stated "there's a drain, that's good... there's proper
drainage..."

I then personally explicitly asked your agent whether he thought the tiles were improperly installed and would
allow leakage, and your agent expressly stated, "No, I don't think so."

Your "Denial" of coverage now states that "they found a beam along the center of the garage ceiling that had
been installed upside down allowing the beam to sag under a loaded condition. The improper installation of
the beam may be contributing to the cracking/separating of the drywall as well as cracking of the grout on the

balcony located directly above. They also found improper installation of tile on the balcony covering the weep screed. This would not allow the balcony to drain properly."

It's amazing how your findings directly contradict what was represented to us during the inspection. It's also amazing that the report sent to us makes no mention of the tiles that need to be repaired, even though your position is that the grout is cracking. This is not the case.

Either your company is intentionally lying and manipulating the findings to avoid liability, or I'm completely wrong and I completely misheard and misunderstood your agent more than seven times.

There appears to be a deliberate misrepresentation of facts and deliberate omission of photographic evidence to support your analysis. If your company cannot properly explain and support your findings, we now have more than ample evidence showcasing The Hartford's deliberate misrepresentations to purposely avoid paying due funds.

If The Hartford would like to maintain its position and force our hand at filing a bad-faith insurance complaint, triggering attorney's fees and *Brandt Fees*, the cost of litigation will quickly dwarf the ▨▨▨ demand currently on the table.

Please respond as to how The Hartford would like to proceed. **Your received immediate written response** is demanded by the close of business July 31, 2014.

Very truly yours,

Natali Davoodi, Esq.

### THE LAW OFFICES OF
### NATAN DAVOODI

3580 Wilshire Blvd.
Suite 1260
Los Angeles, CA 90010
Telephone: 310-889-4554
Facsimile: 213-382-4083
NatanDavoodiLaw.com

July 31, 2014

Linda Goodman
Sentinel Insurance Company, LTD
One Hartford Plaza,
Hartford, Connecticut 06155
Phone: (860) 547-6063
Fax: (866) 809-8054
Email: Linda.Goodman@TheHartford.com

Deborah McCoo
Inside Claim Rep
Phone: (800) 811-4832 x2309615
Email: Deborah.McCoo@TheHartford.com

RE:  **Bad Faith Denial of Due Insurance Payments**
  **Insured:**  Yocheved A Balakaneh & Farivar Gouhari
  **Date of Loss:**  03/01/2014
  **Policy Number:**  61 RBB 638723
  **Claim Number:**  PP0011784393

Linda Goodman,

Last we spoke, you represented that your office would send a copy of the Inspection Report for the Inspection that was made on July 10, 2014. We have not yet received a copy. Before we move on to a **third** inspection, please remit a copy of the requested inspection.

Second, I would like to note that it has become clear that The Hartford would like to schedule this third inspection, not to conduct an investigation, but to create a record that will be used to show that The Hartford attempted to diligently investigate the matter. If a third inspection is needed, that's fine, but we need to see the report for the July 7, 2014 (the second inspection) to substantiate The Hartford's denial of repairs.

I would like to note The Hartford of the following case law:

> Attorney fees incurred in connection with *negotiations* leading up to settlement of the insured's policy claim, and *resulting from the insurer's prior refusal* to pay benefits, are recoverable. *[Mustachio v. Ohio Farmers Ins. Co.*(1975) 44 CA3d 358, 363–364, 118 CR 581, 584 (disapproved on other grounds in *Cassim v. Allstate Ins. Co.*, supra)]

To date our client (your insured) has accured $3,976.13 in attorney's fees. The damage and what was represented to us during the second inspection (held on July 7, 2014) is clear – even though The Hartford states the exact opposite of what the inspector represented to us personally. See July 24, 2014 correspondence.

Lastly, we ask that you see enclosed for a copy of the repair estimate for 12631 Collins, in the amount of ██████ If we cannot resolve this simple matter by August 8, 2014, we will not expend unneeded resources trying to resolve this matter informally. We await your response, but until then we remain, very truly yours,

Natan Davoodi, Esq.

Enclosed: Estimate for Repairs – 12631 Collins



**THE HARTFORD**

August 02, 2014

Natan Davoodi
3580 Wilshire Blvd Suite 1260
Los Angeles, CA 90010

Re:   Insured:          Yocheved A Balakaneh & Farivar Gouhari
       Date of Loss:     03/01/2014
       Policy Number:    61 RBB 638723
       Claim Number:     PP0011784393
       CCPS Number:      Y23 KDP 05192

Dear Mr. Davoodi:

Attached is a copy of the report from Coastline Construction. Please note, as I have previously stated Coastline found
small bubbles in the paint and some discoloration on the drywall on the garage ceiling. They also found a beam in the
garage that had been installed upside down as well as a weep screed on the balcony that was covered with tile/grout
materials. No plumbing leak was found. No roof leak was found. We found faulty workmanship which we have previously
stated is not covered by the policy.

If you wish to pursue the claim, we require an additional inspection. We informed you of this and have made repeated
attempts to contact you to schedule this inspection. We have previously informed you of the insured's duty to cooperate
with the investigation and exhibit the damage property.

Please contact our engineer immediately so that an inspection can be scheduled.

Sincerely,

Linda Goodman
Sr. Claim Representative
(800) 811-4832 x2307761

Writing Company Name: Sentinel Insurance Company

Cc:    Youcheved Balakaneh and Farivar Gouhari
       12631 Collins St
       Valley Village, CA 91607

**For your protection, California law requires the following to appear on this form:**
**Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty**
**of a crime and may be subject to fines and confinement in state prison.**

Handling ID:CCINSURED
LTR11436430
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax       (866) 809 8054



THE
**HARTFORD**

## COASTLINE CONSTRUCTION & RESTAURATION SERVICES, INC
635 N. Eckhoff St. Unit R, Orange CA 92868 Phone: 714-470-7072 Fax: 714-395-9014 www.coastlineteam.com

### INSPECTION REPORT

Inspected reported damage within a garage at 12631 Collins Street, Valley Village, CA 91607, on Thursday, July 10, 2014 at approximately 9:45am. The homeowner and his attorney, Natan Davoodi were present for the inspection.

The interior of the two car garage was completely drywalled and finished. There appeared to be some small signs of water damage along a beam in the center of the ceiling. Standing in front of the garage door opening, the beam spans from left (West) to right (East). The ceiling had two holes made prior to my inspection. These were at the beam.

The small signs of water damage were small bubbles in the paint and some discoloration on the 5/8" drywall. They did not appear to be significant enough to cause cracking.

The beam as viewed in photo # 4 indicates the camber* is not installed properly.

\*Camber

The curvature built into a beam (in a direction opposite to the expected deflection) to prevent it from appearing to sag under a loaded condition.

LOAD



DEFLECTION

The improper installation of this beam may be contributing to the cracking/separating of the drywall as well as the cracking of the grout on the balcony located directly above. A beam installed without the camber pointing upwards towards the sky is not going to properly support a load installed on top of it.

During my inspection the insured and his attorney allowed an inspection of the guest room and balcony above the garage. The attorney and insured were emphatic this is a guest room and rarely used.

The balcony is covered with a ceramic tile which slopes to a drain near the front of the balcony. The exterior walls of the home are stucco. Where the balcony meets the exterior wall of the bedroom, at the base level, is covered with tile as well as seen in photos #11, #12 & #17. Normally this should be a weep screed, not covered by tile/grout materials as it will not allow the proper drainage of water from the stucco's exterior wall surface.

In photos #17 & #18, there is some minor cracking noted in the grout. This can be attributed to normal wear, tear, and/or deterioration as it is exposed to the elements. It also may be due to the improper installation of the beam which is not able to support the load above it correctly.

In photos #19, #20, & #21, the flashing for the outside of the balcony is depicted. The flashing is cut into many segments to allow for the curve of the balcony. Proper installation of the flashing would have used three to four larger pieces with a roofing mastic/sealer or one continuous piece. The multiple pieces used here do not appear to be sealed and do have gaps which could allow water to enter.

Handling ID:CCINSURED
LTR11436430
LG2

**The Hartford**
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax      (866) 809 8054

**THE LAW OFFICES OF**
**NATAN DAVOODI**

3580 Wilshire Blvd.
Suite 1260
Los Angeles, CA 90010
Telephone: 310-889-4554
Facsimile: 213-382-4083
NatanDavoodiLaw.com

**August 8, 2014**

Linda Goodman
Sentinel Insurance Company, LTD
One Hartford Plaza,
Hartford, Connecticut 06155
Phone: (860) 547-6063
Fax:    (866) 809-8054
Email:  Linda.Goodman@TheHartford.com

Deborah McCoo
Inside Claim Rep
Phone:    (800) 811-4832 x2309615
Email:  Deborah.McCoo@TheHartford.com

RE:   **Bad Faith Denial of Due Insurance Payments**
       **Insured:**          **Yocheved A Balakaneh & Farivar Gouhari**
       **Date of Loss:**     **03/01/2014**
       **Policy Number:**    **61 RBB 638723**
       **Claim Number:**     **PP0011784393**

Linda Goodman,

This is in response to your correspondence dated August 2, 2014.

We have received a one-page document your office purports to be the full inspection report.
However, the inspection report is incomplete as it clearly references photographs numbered as low
as "#11" and as high as "#21". We have not seen these photographs and as such have been given
an incomplete document. As an aside, the "Inspection Report" is not signed nor dated.

**Please specify:**
       **(1) How many pages the complete Inspection Report Contains**
       **(2) How many photographs were taken during the inspection**
       **(3) The date the report was prepared**
       **(4) Whose opinion this document represents**
       **(5) Who prepared the Inspection Report**

We can only assume that this is being done to prevent The Hartford from having to divulge
information and persons that may need to be subpoenaed in the future. This is again being done in
bad-faith.

Additionally, as pointed out in our correspondence dated July 24, 2014, the report is in direct
contradiction to what was represented to me at the inspection. The inspector (whose name The
Hartford has decided to omit) was asked about the Beam, was about drainage, was about gaps and
leaks from the grout, and was asked about defective construction –the answer to which was in our
Client's favor.

Lastly, to address your claim that inspection and investigations are being withheld by our Client is
without merit. As pointed out, we cannot move forward until we receive a complete copy of the
Inspection Report. We cannot keep inconveniencing our Client for the sake of The Hartford in

Page 1 of 2

setting up "inspections" so that a "record" of "diligent" inspections is created in the interests of dispelling any notions of "bad-faith."

At this point, there is more than a substantiated grounds for proving bad-faith and setting up further inspections without properly concluding previous inspections is more indicia of The Hartford's bad-faith. Given The Hartford's actions, it is clear that The Hartford is only taking acts to create a record to protect themselves in the event of litigation.

If The Hartford truly does want to prevent litigation, we again ask that the **complete** inspection report from July 10, 2014 be produced. To date, our client (your insured) has incurred **$4,186.26** in attorney's fees to recover policy benefits. (See *Brandt v. Sup.Ct. (Standard Ins. Co.)* (1985) 37 C3d 813, 817, 210 CR 211, 213)

**Please respond by close of business August 8, 2014.**

Natan Davidson, Esq.

Enclosed:
  (1) True and Correct Copy of the "Inspection Report" received – undated, missing photographs, and no reference as to who prepared the report.
  (2) Our Correspondence Dated July 24, 2014



**THE HARTFORD**

## COASTLINE CONSTRUCTION & RESTAURATION SERVICES, INC
635 N. Eckhoff St. Unit R, Orange CA 92869 Phone: 714-410-7072 Fax: 714-395-0034 www.coastlineteam.com

### INSPECTION REPORT

Inspected reported damage within a garage at 12631 Collins Street, Valley Village, CA 91607, on Thursday, July 10, 2014 at approximately 9:45am. The homeowner and his attorney, Natan Davoodi were present for the inspection.

The interior of the two car garage was completely drywalled and finished. There appeared to be some small signs of water damage along a beam in the center of the ceiling. Standing in front of the garage door opening, the beam spans from left (West) to right (East). The ceiling had two holes made prior to my inspection. These were at the beam.
The small signs of water damage were small bubbles in the paint and some discoloration on the 5/8" drywall. They did not appear to be significant enough to cause cracking.
The beam as viewed in photo #4 indicates the camber* is not installed properly.
*Camber
The curvature built into a beam (in a direction opposite to the expected deflection) to prevent it from appearing to sag under a loaded condition.

LOAD ↓



∠ DEFLECTION

The improper installation of this beam may be contributing to the cracking/separating of the drywall as well as the cracking of the grout on the balcony located directly above. A beam installed without the camber pointing upwards towards the sky is not going to properly support a load installed on top of it.
During my inspection the insured and his attorney allowed an inspection of the guest room and balcony above the garage. The attorney and insured were emphatic this is a guest room and rarely used.
The balcony is covered with a ceramic tile which slopes to a drain near the front of the balcony. The exterior walls of the home are stucco. Where the balcony meets the exterior wall of the bedroom, at the base level, is covered with tile as well as seen in photos #11, #12 & #17. Normally this should be a weep screed, not covered by tile/grout materials as it will not allow the proper drainage of water from the stucco's exterior wall surface.
In photos #17 & #18, there is some minor cracking noted in the grout. This can be attributed to normal wear, tear, and/or deterioration as it is exposed to the elements. It also may be due to the improper installation of the beam which is not able to support the load above it correctly.
In photos #19, #20, & #21, the flashing for the outside of the balcony is depicted. The flashing is cut into many segments to allow for the curve of the balcony. Proper installation of the flashing would have used three to four larger pieces with a roofing mastic/sealer or one continuous piece. The multiple pieces used here do not appear to be sealed and do have gaps which could allow water to enter.

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax     (866) 809 8054

**THE LAW OFFICES OF**
**NATAN DAVOODI**

3580 Wilshire Blvd.
Suite 1260
Los Angeles, CA 90010
Telephone: 310-889-4554
Facsimile: 213-382-4083
NatanDavoodiLaw.com

July 24, 2014

Linda Goodman                             Deborah McCoo
Sentinel Insurance Company, LTD           Inside Claim Rep
One Hartford Plaza,                       Phone:    (800) 811-4832 x2309615
Hartford, Connecticut 06155               Email:   Deborah.McCoo@TheHartford.com
Phone: (860) 547-6063
Fax:    (866) 809-8054
Email:  Linda.Goodman@TheHartford.com

RE:   **Bad Faith Denial of Due Insurance Payments**
      **Insured:**          **Yocheved A Balakaneh & Farivar Gouhari**
      **Date of Loss:**     **03/01/2014**
      **Policy Number:**    **61 RBB 638723**
      **Claim Number:**     **PP0011784393**

This letter is in response to your correspondence dated July 17, 2014, wherein you Deny Coverage for damages covered under the Insurance Policy.

There are several points worth mentioning. Firstly, your inspection intentionally omits damages to the exterior of the residence (12631 Collins) and only addresses repairs to fixing drywall in the garage.

It is also worth mentioning that the inspection conducted in July 2014, was a secondary inspection **after** our offices sent a demand letter on July 2, 2014. The inspection was arranged, seemingly with the intent, to make a showing that The Hartford is "diligently" investigating the matter.

However, your actions are without merit and being done in bad-faith. The inspection performed in July of 2014 is dated **3/21/2014**. Additionally, having actually attended the inspection of July 2014 in person, the inspector represented to me that he does not think the damage is related to a construction defect and stated that the "house is pretty new."

Additionally, we gave the inspector a ladder to look into the ceiling to assess the damage and flat-out asked him what damage he saw. He took a sample of the drywall and said there seems to be **only** water damage. I explicitly asked him whether he thought there was construction defect and the agent stated, "No." He stated that he thinks that "if there is sagging, it's just the house settling. That's what houses do." Additionally, when your agent was inspecting the balcony, he explicitly stated "there's a drain, that's good... there's proper drainage..."

I then personally explicitly asked your agent whether he thought the tiles were improperly installed and would allow leakage, and your agent expressly stated, "No, I don't think so."

Your "Denial" of coverage now states that "they found a beam along the center of the garage ceiling that had been installed upside down allowing the beam to sag under a loaded condition. The improper installation of the beam may be contributing to the cracking/separating of the drywall as well as cracking of the grout on the

balcony located directly above. They also found improper installation of tile on the balcony covering the weep screed. This would not allow the balcony to drain properly."

It's amazing how your findings directly contradict what was represented to us during the inspection. It's also amazing that the report sent to us makes no mention of the tiles that need to be repaired, even though your position is that the grout is cracking. This is not the case.

Either your company is intentionally lying and manipulating the findings to avoid liability, or I'm completely wrong and I completely misheard and misunderstood your agent more than seven times.

There appears to be a deliberate misrepresentation of facts and deliberate omission of photographic evidence to support your analysis. If your company cannot properly explain and support your findings, we now have more than ample evidence showcasing The Hartford's deliberate misrepresentations to purposely avoid paying due funds.

If The Hartford would like to maintain its position and force our hand at filing a bad-faith insurance complaint, triggering attorney's fees and *Brandt Fees*, the cost of litigation will quickly dwarf the ████████ demand currently on the table.

Please respond as to how The Hartford would like to proceed. <u>Your received immediate written response</u> is demanded by the close of business July 31, 2014.

Very truly yours,

Natasi Davoodi, Esq.



THE
HARTFORD

August 08, 2014

Natan Davoodi
3580 Wilshire Blvd. Suite 1260
Los Angeles, CA 90010

Re:  Insured:          Yocheved A Balakaneh & Farivar Gouhari
     Date of Loss:     03/01/2014
     Policy Number:    61-RBB 638722
     Claim Number:     PP0011784393
     CCPS Number:      Y23 KDP 05192

Dear Mr. Davoodi:

I received your letter dated August 8, 2014. To reiterate: Youcheved Balakaneh and Farivar Gouhari filed a claim. We inspected the damage and Youcheved Balakaneh and Favivar Gouhari withdrew their claim. We then received your original letter. We sent a contractor out to look at the damage in the garage. In the contractor's opinion, the damage was caused by faulty workmanship which is stated in the report we provided to you. They provided a one page report which we sent to you and you acknowledge receiving. You were at the inspection. You saw the photos that were taken and met the contractor that completed the inspection. If you wish to proceed with this claim, you are required to cooperate with the investigation. I have attached a copy of the photos taken by the contractor to this letter as well as another copy of the report. If you read the report, you will see that the report was provided by Coastline Construction. The report includes their name, address and phone number.

I am asking that you return my phone calls and set up a meeting with our structural engineer so that we may further investigate the cause of loss. This would be more productive than sending threatening letters and delaying our investigation. At this point, based on the information we have, we believe the cause of loss is faulty workmanship which is not covered by the policy. You don't state what you believe the cause of loss is. Per the policy, if you believe there is coverage under the policy, you must allow us to inspect the property and investigate the loss. I remind you of the policy conditions:

**B.  Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

4.  Protect the property from further damage. If repairs to the property are required, you must:
    a.  Make reasonable and necessary repairs to protect the property; and
    b.  Keep an accurate record of repair expenses;
5.  Cooperate with us in the investigation of a claim;
7.  As often as we reasonably require:
    a.  Show the damaged property;
    b.  Provide us with records and documents we request and permit us to make copies; and
    c.  Submit to examination under oath, while not in the presence of another "insured", and sign the same;

Handling ID:CCINSURED
LTR11436430
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax      (866) 809 8054



**THE
HARTFORD**

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interests of all "insureds" and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;
   d. Changes in title or occupancy of the property during the term of the policy;
   e. Specifications of damaged buildings and detailed repair estimates;
   f. The inventory of damaged personal property described in 6. above;
   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

Please also be advised under that same Section:

**G. Suit Against Us**
No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

If mold is found due to your delays and refusal to co-operate with us, there may not be coverage for any mold that may be found.

Also refer to the policy Exclusions which read in part:

**SECTION I – EXCLUSIONS**
B. We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

   3. Faulty, inadequate or defective:
      a. Planning, zoning, development, surveying, siting;
      b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      c. Materials used in repair, construction, renovation or remodeling; or
      d. Maintenance;
      of part or all of any property whether on or off the "residence premises".

The HW 0103 Endorsement changes the policy. Please refer to the HW 0103 **AMENDATORY ENDORSEMENT – SPECIFICALLY EXCEPTED PERILS** which provides:

As used herein, "Peril" means a cause of physical loss or damage to property. It has this meaning whether or not it is called a "Peril" or a "Cause of Loss" in this policy.

Even if any of the terms of this policy might be construed otherwise, the following Perils, as described in Paragraphs A. and B. below, are SPECIFICALLY EXCEPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR, EITHER OF THESE PERILS:

**A. ACTS, ERRORS OR OMISSIONS** by you or others in:

Handling ID:CCINSURED
LTR11436430
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax      (866) 809 8054



**THE HARTFORD**

1. Planning, zoning, developing, surveying, testing or siting property;
2. Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris;
3. The design, specifications, workmanship, repair, construction, renovation, remolding, grading or compaction of all or any part of the following:
   a. Land or buildings or other structures;
   b. Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or
   c. Other improvements or changes in or additions to land or other property.
4. The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or
5. The maintenance of any such property or facilities.

This exception A. applies whether or not the property or facilities described above are:
1. Covered under this policy; or
2. On or away from the covered premises.

This exception A. does not reduce the insurance for loss or damage caused directly by a Covered Peril.
As used in this endorsement:
1. If this policy is written to cover the risk of loss from specifically named cause, "Covered Peril" means any Peril specifically named as covered; or
2. If written to cover the risk of loss without specifying specifically named causes, "Covered Peril" means any Peril not described above and not otherwise excluded or excepted from the causes of loss covered by this policy.

**B. COLLAPSE, "CRACKING" OR "SHIFTING"** of buildings, other structures or facilities, or their parts, if the collapse, "cracking" or "shifting":
1. Occurs during "earth movement," "volcanic eruption" or "flood" condition or within 72 hours after they cease; and
2. Would not have occurred but for "earth movement," "volcanic eruption" or "flood."

But if loss or damage by a covered Peril ensues at the covered premises, we will pay for that ensuring loss or damage.

This exception B. applies whether or not there are other provisions in this policy relating to collapse, "cracking" or "shifting" of buildings, other structures or facilities, or their parts. Any such provision is revised by this endorsement to include this exception.

But if this policy specifically covers (by endorsement or in any other way) loss or damage caused by one or more or the following Perils:
1. Earthquake;
2. Flood;
3. Volcanic action;
4. Volcanic eruption; or
5. Sinkhole collapse,

Handling ID: CCINSURED
LTR11436430
LG2

The Hartford
P.O. Box 14266
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax '   (866) 809 8054



**THE
HARTFORD**

This exception **B**. will not reduce that coverage.
As used in this exception **B.**:
1.  "Cracking" means cracking, separating, shrinking, bulging, or expanding;
2.  "Shifting" means shifting, rising, settling, sinking, or lateral or other movement;
3.  "Earth movement" means any earth movement, including but not limited to "earthquake," landslide, mudflow, erosion, contraction or expansion, subsidence, any movement of earth resulting from water combining with the ground or soil, and any other "shifting" of earth; all whether or not combined with "flood" or "volcanic eruption." It does not include sinkhole collapse if loss by sinkhole collapse is specifically covered in this policy;
4.  "Earthquake" means a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or "shifting" of rock beneath the surface of the ground from natural causes. An "Earthquake" includes all related shocks and after shocks;
5.  "Volcanic eruption" means the eruption, explosion or effusion of a volcano. It does not include volcanic action if loss by volcanic action is specifically covered in this policy;
6.  "Flood" means:
    a.  Flood, surface water, waves, tides, tidal water, tidal waves, high water, and overflow of any body of water, or their spray, all whether driven by wind or not;
    b.  Release of water held by a dam, levy or dike or by a water or flood control device;
    c.  Water that backs up from a sewer or drain; or
    d.  Water under the ground surface pressing on, or flowing, leaking or seeping through:
        (1)  Foundations, walls, floors or paved surfaces;
        (2)  Basements, whether paved or not; or
        (3)  Doors, windows or other openings.
All other provisions of the policy apply.

Please call me to set up an inspection with a structural engineer if you wish to investigate and proceed with the claim.

Sincerely,

Linda Goodman
Sr. Claim Representative
(800) 811-4832 x2307761

Writing Company Name: Sentinel Insurance Company

Cc:     Youcheved Balakaneh and Farrivar Gouhari.
        12631 Collins St
        Valley Village, CA 91607

Attachment:    Photos

**For your protection, California law requires the following to appear on this form:**
**Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty**
**of a crime and may be subject to fines and confinement in state prison.**

Handling ID:CCINSURED
LTR11436430
LG2

The Hartford
P.O. Box 14265
Lexington, KY 40512-4266
Toll-Free (800) 811 4832
Fax      (866) 809 8054

**THE LAW OFFICES OF
NATAN DAVOODI**

3580 Wilshire Blvd.
Suite 1260
Los Angeles, CA 90010
Telephone: 310-889-4554
Facsimile: 213-382-4083
NatanDavoodiLaw.com

**August 21, 2014**

Linda Goodman
Sentinel Insurance Company, LTD
One Hartford Plaza,
Hartford, Connecticut 06155
Phone: (860) 547-6063
Fax: (866) 809-8054
Email: Linda.Goodman@TheHartford.com

Robert Rupp
Executive Vice President and
Chief Risk Officer, The Hartford
Email: Robert.Rupp@TheHartford.com

Deborah McCoo
Inside Claim Rep
Phone: (800) 811-4832 x2309615
Email: Deborah.McCoo@TheHartford.com

**VIA EMAIL**

RE: **Bad Faith Denial of Due Insurance Payments**
    **Insured:** Yocheved A Balakaneh & Farivar Gouhari
    **Date of Loss:** 03/01/2014
    **Policy Number:** 61 RBB 638723
    **Claim Number:** PP0011784393

Linda Goodman,

This is in response to your correspondence dated August 8, 2014. This letter is again intended to preserve the record and correct intentional misrepresentations being made.

Your letter dated August 8, 2014 falsely states that although we were provided with a "one page report" , we "saw the photos that were taken". This is completely untrue. No photos were shown to us nor were we given any photos. In fact, our August 8, 2014 correspondence explicitly requests production of the photographs referenced in the "one page report." Likewise, your offices have intentionally withheld further requested information with regards to the "one page report" which again was requested in our August 8, 2014 correspondence – more specifically, we have NOT yet received a response for the following:

Please specify:
    **(1) How many pages the complete Inspection Report Contains**
    **(2) How many photographs were taken during the inspection**
    **(3) The date the report was prepared**
    **(4) Whose opinion this document represents**
    **(5) Who prepared the Inspection Report**

*We can only assume that this is being done to prevent The Hartford from having to divulge information and persons that may need to be subpoenaed in the future. This is again being done in bad-faith.*

Additionally, your office reached a conclusion based upon the July 10, 2014 investigation. Curiously the one page report made and the photos shared with us do NOT support the conclusion reached by The Hartford – namely, there is no photograph evidencing that a beam was installed improperly nor is there any photograph evidencing any fault with the tile work.

Lastly, we again notify your office that we have fully complied with all investigations. Your office has repeatedly refused to send us the required information on the report done in July 2014, the second investigation done. Your office wants to set up a **third** investigation without having completed the second report. That is simply unreasonable and we are not willing to allow multiple reports to be done with the ability to fabricate conclusions with hindsight.

As stated before, there are clear inconsistencies. To date, our client (your insured) has incurred **$4,443.57** in attorney's fees to recover policy benefits. (See *Brandt v. Sup.Ct. (Standard Ins. Co.)* (1985) 37 C3d 813, 817, 210 CR 211, 213)

Natan Davoodi, Esq.

Cc:

**Robert Rupp**
Executive Vice President and
Chief Risk Officer, The Hartford